366 F.Supp. 988 (1973)
HARRY WINSTON, INC., a corporation, Plaintiff,
v.
The TRAVELERS INDEMNITY COMPANY, Defendant.
No. 73 C 230(A).
United States District Court, E. D. Missouri, E. D.
November 1, 1973.
F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, Mo., for plaintiff.
Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
The plaintiff, a New York corporation, brought this action against the defendant, *989 Travelers Indemnity Company (hereinafter referred to as Travelers), a Connecticut corporation, to recover the sum of $18,200.00, plus interest from June 20, 1972, and costs under Travelers' homeowners policy No. HO 5013936.
Jurisdiction of this Court exists and is based upon diversity of citizenship and amount.
The facts are before this Court by way of oral testimony, depositions and exhibits, including the file of the case of Harry-Winston, Inc. v. Morris Moscowitz (Cause No. 317,788, Circuit Court of the County of St. Louis). In December of 1968, Morris Moscowitz, a resident of St. Louis, Missouri, was insured by Travelers under a homeowners policy, No. HO-5013936 (Plaintiff's Exhibit 3), which was in full force and effect at the time in question. On December 14, 1968, while in New York, Moscowitz went into Winston's Jewelry Store in the hope of locating a gift for his wife. He selected a diamond and sapphire clip (hereinafter referred to as jewelry), priced at $18,200.00, and was permitted to bring it to St. Louis on approval, with the understanding that he would send the purchase price to Winston if his wife wanted the jewelry, and would return the jewelry if she did not. These events took place on a Saturday afternoon, and Moscowitz returned to St. Louis later that same afternoon. Moscowitz in his deposition (contained in Plaintiff's Exhibit 1), and at trial, stated that his wife did not want the jewelry, and that on the following Monday he called Winston Jewelry Store, informed them that he was not keeping the jewelry and would return it by mail. Moscowitz stated that on that same Monday morning he went to the Brentwood Post Office in Brentwood, Missouri, and mailed the jewelry back to the plaintiff. Plaintiff never received the jewelry. At the trial Moscowitz testified that he did not have a registered receipt for mailing the jewelry. The deposition of a postal official, Frank J. Oly, contained in Plaintiff's Exhibit 1, revealed that the chronological records of registered mail at the Brentwood Post Office do not indicate that Moscowitz sent the jewelry by registered mail.
On June 20, 1972, in the Circuit Court of the County of St. Louis (Cause No. 317,788), the plaintiff, Harry Winston, Inc., obtained a default judgment of $18,200.00 against Moscowitz for failure to return the item of jewelry obtained on approval in December of 1968 from the plaintiff. Before the default judgment was entered against Moscowitz, but after discovery in Harry Winston, Inc. v. Morris Moscowitz (Cause No. 317,788), Moscowitz entered in agreement with Harry Winston, Inc. Under this agreement Moscowitz paid Harry Winston, Inc., $2,500.00 which he would receive back in the event the Court holds there is coverage under the Travelers' policy, and Harry Winston, Inc., agreed not to execute except against Moscowitz' insurance.
In Moscowitz' homeowners policy with Travelers, under "Section II, Coverage E", protection is provided for Moscowitz on account of his "Personal Liability" for "Personal Injury and Property Damage". The limit of liability under "Coverage E" is $200,000.00. In the insert to the policy entitled "Homeowners Policy  Special Form", the following appears:
"PROVISIONS APPLICABLE TO SECTION II
"This Company Agrees With The Named Insured:
"INSURING AGREEMENTS
"1. COVERAGE EPERSONAL LIABILITY:
"(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of * * * property damage, and the Company shall defend any suit against the Insured alleging such * * * property damage.

*990 * * * * * *
"5. SUPPLEMENTARY DEFINITIONS:
"(b) `Property Damage' means injury to or destruction of property, including loss of use thereof."
It is Travelers' position that its policy does not apply to the liability of Moscowitz evidenced by the judgment entered against him and that, therefore, it has no obligation to pay the judgment. Travelers contends that, according to the terms of Moscowitz' homeowners policy, it was never intended by the parties that this type liability would be covered due to paragraph "(f)" of "Special Exclusions" to Section II:
"Section II of this Policy Does Not Apply:
"(f) under Insuring Agreement 1(a) of Coverage E, to property damage to property used by, rented to or in the care, custody or control of the Insured, or property as to which the Insured for any purpose is exercising physical control;"
There are two issues before this Court. First, is the loss of the jewelry in the mails covered within the language of the personal liability section of Moscowitz' policy, Coverage E? In other words, is it property damage as defined in the policy of a type that was meant to be covered under the policy? Second, if the jewelry loss is property damage within the language of the personal liability section does special exclusion "(f)" apply to the facts of this case to relieve the insurer of liability?
With respect to the first issue, the construction of insurance contracts is governed by the same general rules as are applied to the construction of other written contracts. "The function of the courts is to construe them, not to make them." Henderson v. Massachusetts Bonding & Insurance Company, 337 Mo. 1, 84 S.W.2d 922, 924 (1935). An insurance policy is a contract in which [p]lain and unambiguous language must be given its plain meaning. The contract should be construed as a whole but, insofar as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614 et seq., 267 S.W. 379, 381, 382 (1924).
This Court is of the opinion that this loss of jewelry in the mails is not the type of loss covered within the meaning of the term "property damage" as set out in the homeowners policy in question. "Property damage" is defined in the policy under "Section II-5. Supplemental Definitions (b) "as follows: "[I]njury to or destruction of property, including loss or use thereof." Giving this language its "plain meaning" as required by State ex rel. Security etc. v. Allen, supra, there was no injury to or destruction of the jewelry. Therefore, there was no property damage within the meaning of the policy. The jewelry was simply lost or stolen in some manner.
Even if the answer to our first issue was in the affirmative and the loss of the jewelry could be considered property damage as defined in the insurance policy in question, the defendant would be relieved of its obligation to pay by special exclusion "(f)". Under the present fact situation the jewelry was mailed by ordinary mail and lost or stolen before it reached the plaintiff. When Moscowitz mailed the jewelry by ordinary mail the inquiry raised by the exclusionary clause is whether the jewelry lost or stolen was in the care, custody or control of Moscowitz. The plaintiff claims that Moscowitz did not have care, custody or control at the time the jewelry was lost or stolen from the mails and, therefore, brings his liability within the coverage provided by his policy. The fallacy of this contention lies in the assumption that special exclusion "(f)" is directed to the time when the loss of the jewelry which is the subject of damages for liability occurs. Under the circumstances of our present case the fact of loss determines primarily the amount of damages as distinguished from liability *991 for damages. The liability for which such damages are awarded may be attributable to many factors. The exclusionary provisions of the policy are concerned with the insured's liability; with the act that makes him liable for damages because of the loss. As a consequence, the decisive factor is control of the jewelry at the time of the act which made the insured liable for its loss, rather than control at the time of destruction or loss. Karpe v. Great American Indemnity Co., 190 Cal.App.2d 266, 11 Cal.Rptr. 908, 912 (1961).
In the Karpe case the court said, "An apparent purpose of the exclusionary clause is to except from policy coverage liability on account of damage to property held under bailment." In that case, the plaintiff was the owner of a bull used for breeding purposes. A person named King left her cow, Domino Belle 2d, at plaintiff's ranch, by agreement, to be bred by plaintiff's bull. During this time plaintiff mistook Domino Belle 2d for one of his cows and sent her to a slaughterhouse, operated by another, where she was destroyed. King brought suit against plaintiff for damages resulting from the loss of the cow, and plaintiff's liability insurance carrier refused to defend the suit or pay the judgment because the policy contained an exclusionary clause similar to special exclusion "(f)" in the policy before this Court herein. The California District Court of Appeal held that the exclusionary provisions of the policy applied and that the liability alleged did not come within policy coverage, even though the cow was destroyed at the slaughterhouse of another, where plaintiff had sent it. The court said at page 912 that: "Under any circumstances, plaintiff's liability to King grew out of the bailment, i. e., out of the fact that he had the care and custody of Domino Belle 2d and falls squarely within the purposes of the exclusion. * * * The act of mistakenly or inadvertently selling or sending the cow to the slaughterhouse instituted the plaintiff's liability."
In the case here, the act which instituted the insured's liability for the loss of the jewelry was the act of the insured in mailing the jewelry by ordinary mail instead of registered or certified mail. The foregoing conclusion is based on the fact that a bailment relationship existed between Harry Winston, Inc., and Moscowitz for the mutual benefit of both parties. In cases of bailment for the benefit of both parties, the bailee, in our case Mr. Moscowitz, is held to the standard of ordinary care and is liable for ordinary negligence. The bailee is required to give such care to the bailed property as a prudent owner would extend to his own property of a similar kind. Preston v. Prather, 137 U.S. 604, 11 S.Ct. 162, 34 L.Ed. 788 (1891) State ex rel. Townsend v. Meagher, 44 Mo. 356 (1869).
In Kittay v. Cordasco, 103 N.J.L. 156, 134 A. 667 (1926), the plaintiff, a dealer in diamonds, had delivered to the defendant, likewise a dealer, three diamonds to display to a prospective purchaser. The defendant had placed these loose in his pocket and attended a public auction. In these circumstances, the court held the bailee guilty of negligence. Likewise, Mr. Moscowitz was negligent in not returning the jewelry by registered or certified mail. This was the act that made Moscowitz responsible for the loss of the jewelry, and at the time of this act he had care, custody and control of the jewelry. Therefore, special exclusion "(f)" applies.
For the reasons heretofore stated, the Court finds that the loss of an item of jewelry is not within the meaning of the term "property damage" as used in the policy in question. The Court further finds that even if the loss of an item of jewelry were within the meaning of the term "property damage" as used in the policy in question the exclusionary provision "(f)" of the policy applies and the liability alleged by the plaintiff does not come within policy coverage.
This memorandum opinion is adopted by the Court as its findings of fact and *992 conclusions of law and the clerk of the court is directed to prepare and enter the proper order finding in favor of the defendant and against the plaintiff.