HOFING GMC TRUCK, INC., Plaintiff,

v.

KAY WHEEL SALES COMPANY, INC., Defendant and Third-Party Plaintiff,

v.

METROPOLITAN BUREAU OF INVESTIGATION, INC., Third-Party Defendant,

and

Midland Insurance Company and W. H. Brownyard Corporation, Garnishees.

Civ. A. No. 78–2924.

United States District Court, E. D. Pennsylvania.

July 19, 1982.

Timothy J. Savage, Philadelphia, Pa., for plaintiff.

F. James Gallo, Philadelphia, Pa., for defendant and third-party plaintiff.

Daniel F. Monahan, Philadelphia, Pa., for garnishees.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

During the night of Friday, January 27 to Saturday, January 28, 1978, an eight-wheel tractor owned by plaintiff Hofing GMC Truck, Inc. ("Hofing") was stolen from the premises of defendant Kay Wheel Sales Co., Inc. ("Kay"). Hofing filed suit against Kay for the value of the tractor plus incidental damages, and Kay shortly thereafter filed a third-party complaint against Métropolitan Bureau of Investigation, Inc. ("Metropolitan") a security agency under contract with Kay to furnish the services of a security guard to protect Kay's premises on the night the tractor was stolen. Metropolitan failed to appear and defend, and a default judgment was entered against Metropolitan and in favor of Kay on January 9, 1979. On April 30, 1979, following trial on April 23, 1979, judgment was entered in favor of plaintiff Hofing and against defendant Kay

in the amount of $42,308.85. On May 7, 1979, following a hearing on damages on Kay's third-party action against Metropolitan, judgment was entered in favor of Kay and against Metropolitan on Kay's indemnity claim in the amount of $42,308.85. Kay then sought to have its judgment satisfied by garnishing the proceeds of a comprehensive general liability insurance policy which allegedly covered Metropolitan's operations at the time of the incident. The insurer, garnishee Midland Insurance Company ("Midland"), has denied coverage. Kay now moves for summary judgment. For the reasons set forth below, Kay's motion will be granted.

The insurance policy involved here was issued by Midland to Metropolitan on January 1, 1978, the day after Metropolitan entered into the agreement with Kay to provide security guard services. The policy is entitled "Comprehensive General Liability Insurance," and identifies the business of the insured as "Security Operations" and "Detective and Patrol." See Kay's Motion for Summary Judgment against Garnishee Midland Insurance Co. ("Kay's Motion"), Exhibit B; Midland's Answer to the Motion for Summary Judgment ("Midland's Answer"), Exhibit A. The policy itself consists of a series of printed and typewritten forms, providing coverage for property damage liability, personal injury liability, and contractually assumed liability.

A reading of the moving papers shows that there is no genuine issue as to any material fact regarding the incident for which coverage is sought. Thus, the only question addressed by the parties in their legal memoranda is whether the Midland policy, properly construed, provides coverage for the theft of the tractor under the circumstances of this case. Where an insurer's liability depends upon the construction of a clause or an exception that presents strictly a legal question for the Court, resolution of the dispute by summary judgment is appropriate. See Fed.R.Civ.P. 56; 6 Moore's Federal Practice ¶ 56.17[31] (2d ed. 1982).

Kay contends that two provisions of the Midland policy provide coverage. First, Kay argues that coverage is provided under an endorsement entitled "SECURITY GUARD PROGRAM," which appears intended to afford some form of coverage for errors and omissions of Metropolitan's employees in the performance of their professional services. Secondly, Kay asserts that the theft of the tractor is covered by the policy provisions providing coverage for certain of Metropolitan's contractually assumed liabilities. The Court has concluded, however, that the "SECURITY GUARD PROGRAM" endorsement provides coverage in this instance. The remainder of this memorandum will accordingly be limited to a discussion of the Court's analysis of that endorsement.

On a printed form designated L6394(a), one of the forms constituting the Midland policy at issue, Midland provides, in pertinent part, the following coverage:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Kay's Motion, Exhibit B; Midland's Answer, Exhibit A. "Property damage" is defined as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom,

or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Kay's Motion, Exhibit B. The provision providing coverage for property damage is followed on the printed form by sixteen exclusions, which include, as exclusion "(k)," the following:

This insurance does not apply:

. . . . .

(k) to property damage to
(1) property owned or occupied by or rented to the insured,
(2) property used by the insured, or
(3) *property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control* ;

Kay's Motion, Exhibit B; Midland's Answer, Exhibit A (emphasis added). This exclusion, however, is modified by an endorsement to the policy. The endorsement appears to be a typewritten but standardized form and is entitled "SECURITY GUARD PROGRAM—Special Endorsements." The endorsement provides, in pertinent part:

1. SPECIAL BROAD FORM P.D.

In consideration of the rates charged hereunder, it is agreed that Exclusion K(3) of Coverage Part L6394a (Comprehensive General Liability) is deleted as respects the Insured's professional services as security guard except burglar alarm operations.

. . . . .

2. ERRORS AND OMISSIONS

In consideration of the premium charged under this policy, it is agreed that the coverages afforded by the policy (Bodily Injury Liability, Property Damage Liability and Personal Injury Liability) shall apply to negligent acts, errors or omissions on the part of the Insured or the employees or agents of the Insured solely in the professional conduct of the Insured's security guard operation.

3. THEFT

It is hereby understood and agreed that notwithstanding anything in the policy or endorsements attached thereto to the contrary, no coverage shall be provided for theft, burglary, robbery, inventory shortage and/or inventory shrinkage, including direct and/or consequential damage resulting therefrom.

Kay contends that the provisions above and the policy generally evidence the intent of the parties to provide coverage for the theft of property from premises guarded by Metropolitan. Midland, on the other hand, argues that no coverage is provided, first, because theft of the property is not "property damage" within the meaning of the policy, and secondly, because paragraph 3 of the "SECURITY GUARD PROGRAM" endorsement specifically excludes coverage for theft.

The parties appear to agree that the construction of the Midland policy is governed by principles of Pennsylvania law. The rules governing the interpretation of insurance policies in Pennsylvania are well established. An insurance policy is a contract, and accordingly a court's duty is to ascertain the intent of the parties as manifested in the language of the agreement. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3d Cir. 1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981); *Mohn v. American Casualty Co.*, 458 Pa. 576, 586, 326 A.2d 346, 351 (1974). The policy must be read in its entirety, and policy terms must be given their plain and ordinary meanings where the language used is clear and unambiguous. *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). Courts should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits, and a court should not torture the language of the policy in order to create ambiguities. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co., supra*, at 1075. If an ambiguity does exist, however, the ambiguity should be resolved in favor of the insured. *St. Paul Fire &*

*Marine Insurance Co. v. United States Fire Insurance Co.*, 655 F.2d 521 (3d Cir. 1981); *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co., supra*, at 1075; *Mohn v. American Casualty Co., supra*, 458 Pa. at 586, 326 A.2d at 351.

With these principles in mind, the Court turns first to Midland's argument that the theft of property does not constitute "property damage" within the meaning of the policy. "Property damage" is defined as "(1) physical injury to or destruction of tangible property ... *or (2) loss of use of tangible property which has not been physically injured or destroyed....*" See Kay's Motion, Exhibit A. Arguably, theft of property is not a form of "physical injury to or destruction of tangible property." *See United States Fidelity & Guaranty Co. v. Mayor's Jewelers of Pompano, Inc.*, 384 So.2d 256, 258 (Fla.Dist.Ct.App.1980). Nevertheless, if property is stolen, the rightful possessor is necessarily no longer able to use that property. Thus, he suffers a "loss of use" in the plain, ordinary sense of those words. Midland's argument to the contrary is embodied in three conclusionary sentences which fail to suggest any tenable ground for concluding that the phrase "loss of use" has some narrower meaning that would exclude loss of use caused by theft.[1] Accordingly, the Court holds that the theft of Hofing's tractor from Kay's premises constituted "property damage" within the meaning of the Midland policy.

Midland's second argument in support of its denial of coverage is that the "THEFT" exclusion contained in the "SECURITY GUARD PROGRAM" endorsement bars recovery. The "SECURITY GUARD PROGRAM" endorsement deletes exclusion (k)(3) to the policy's coverage for property damage. If not deleted, exclusion (k)(3) would preclude coverage for property damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." In addition to deleting exclusion (k)(3), however, the endorsement contains a provision entitled "ERRORS AND OMISSIONS," which explicitly provides that "the coverages afforded by the policy ... [including property damage liability coverage] shall apply to negligent acts, errors or omissions on the part of ... the employees ... of the Insured solely in the professional conduct of the Insured's security guard operation." These words are unambiguous. Read together with the property damage liability provisions, the "ERRORS AND OMISSIONS" clause clearly affords coverage for all "property damage" liability caused by the negligence of Metropolitan's employees in rendering their professional services as security guards. For the reasons already set forth, the coverage would include coverage for the liability resulting if one of Metropolitan's employees negligently permitted property to be stolen from premises under guard.

The "ERRORS AND OMISSIONS" provision, however, is followed by a provision entitled "THEFT," which provides:

> It is hereby understood and agreed that notwithstanding anything in the policy or endorsements attached thereto to the contrary, no coverage shall be provided for theft, burglary, robbery, inventory shortage and/or inventory shrinkage, including direct and/or consequential damage resulting therefrom.

*See* Kay's Motion, Exhibit B; Midland's Answer, Exhibit A. In interpreting this

---

1. In support of its argument that theft of property does not constitute property damage, Midland cites *Harry Winston, Inc. v. Travelers Indemnity Co.*, 366 F.Supp. 988 (E.D.Mo.1973), aff'd, 492 F.2d 1248 (8th Cir. 1974). The Court finds the cited case unpersuasive. First, the "property damage" involved in *Harry Winston* was a loss in the mails, not a theft. Secondly, the court's result in *Harry Winston* is also supported by a more thoroughly reasoned alternative holding, which is based upon the insur- ance policy's explicit exclusion of coverage of property damage to property "in the care, custody or control" of the insured—an exclusion which has been explicitly deleted in the Midland policy. Indeed, in the only case found by the Court to address the question whether theft of property may constitute "property damage," the court held in favor of the insured. *United States Fidelity & Guaranty Co. v. Mayor's Jewelers of Pompano, Inc., supra.*

provision, the same principles of construction reviewed earlier still apply. Applying those principles, Midland argues that the policy language clearly and unambiguously excludes "property damage" resulting from any theft, including the theft of property negligently guarded by Metropolitan. Kay, on the other hand, argues that the clear and unambiguous meaning of the provision is that coverage would not be provided for any theft of Metropolitan's *own* property occurring while its employees were on duty. Kay further argues that even if the exclusion is not clearly and unambiguously limited to thefts of Metropolitan's property, the provision is at least ambiguous in that regard, and must accordingly be construed to provide coverage.

"A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Celley v. Mutual Benefit Health & Accident Association*, 229 Pa.Super. 475, 481–482, 324 A.2d 430, 434 (1974). *See also Garber v. Travelers Insurance Companies*, 280 Pa.Super. 323, 325, 421 A.2d 744, 745 (1980). The language of the "THEFT" exclusion in the Midland policy, read alone, does not distinguish between thefts of property guarded and thefts of Metropolitan's own property, nor does it distinguish between thefts by unknown third persons and thefts by Metropolitan's own employees. This might suggest that all such thefts, including the theft of Hofing's tractor, are excluded from coverage. Such an interpretation does not follow, however, from a construction of the "THEFT" provision *in context*, considering the policy as a whole and the "ERRORS AND OMISSIONS" provision in particular. The comprehensive nature of the policy suggests an intent to furnish Metropolitan with insurance against the liabilities to which it is exposed in the course of doing business. In light of the gravity of that risk in Metropolitan's business, and Metropolitan's obvious need to insure against such a risk, the Court concludes that reasonably intelligent men would honestly differ on whether the "THEFT" exclusion bars recovery for all thefts, or only for thefts of Metropolitan's own property or thefts by Metropolitan's own personnel.

The conclusion that the "THEFT" exclusion is ambiguous is buttressed by the rule that in determining whether an ambiguity exists, a court may consider whether alternative or more precise language would have put the matter beyond reasonable question. *Celley v. Mutual Benefit Health & Accident Association, supra*, 229 Pa.Super. at 482, 324 A.2d at 434. In the present case, Midland could easily have further defined the "thefts" excluded by adding language explicitly stating that the exclusion applied to thefts of property guarded by Metropolitan or its employees as well as to thefts of its own property, and also applied to thefts perpetrated by third persons as well as to thefts perpetrated by Metropolitan's own employees. Such language would not only eliminate ambiguity, but would also alert the prospective insured to the insurer's intention not to cover a major risk of the security guard business.

Having thus determined that the "THEFT" exclusion is ambiguous, the Court must adopt a construction of the provision that favors the insured. *St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co., supra; Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co., supra; Mohn v. American Casualty Co., supra*. In light of this principle, the most reasonable interpretation of the "THEFT" exclusion is that no coverage would be provided for theft perpetrated by Metropolitan's own personnel. Under such an interpretation, the theft of Hofing's tractor would not fall within the exclusion, and Midland's policy must be held to cover Metropolitan's liability for the damages resulting from the theft of Hofing's tractor from Kay's premises. Accordingly, the Court will grant Kay's motion for summary judgment, and enter judgment in favor of Kay in the amount of $42,308.85.

An appropriate Order will be entered.