**Opinion filed November 27, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00082-CV

_____

## HALLMARK SPECIALTY INSURANCE COMPANY AND UNITRIN COUNTY MUTUAL INSURANCE COMPANY, Appellants

## V.

## MANRIQUEZ TRUCKING, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-131,540**

### M E M O R A N D U M   O P I N I O N

This is a declaratory judgment action. Appellants, Hallmark Specialty Insurance Company and Unitrin County Mutual Insurance Company, each issued an insurance policy to Appellee, Manriquez Trucking.[1] Manriquez sought a declaration in the trial court that, under the terms of the insurance policies,

---

[1]The named insured on both policies was "A.S. Manriquez Trucking Inc."

Hallmark and Unitrin had a duty to defend it in an underlying lawsuit in which Master Corporation sought to recover property damages from Manriquez. The trial court entered a summary judgment that Hallmark and Unitrin had a duty to defend Manriquez in the underlying suit. The trial court also awarded attorney's fees to Manriquez. Hallmark and Unitrin have filed this appeal from the trial court's judgment. We reverse the trial court's judgment, render judgment that Hallmark and Unitrin do not have a duty to defend Manriquez in the underlying suit, and remand the issue of attorney's fees to the trial court for further proceedings consistent with this opinion.

Hallmark issued a commercial liability insurance policy to Manriquez. The policy number was TXG302288-01, and the policy period was from February 26, 2010, to February 26, 2011. Under the policy, Hallmark agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy provided that Hallmark had "the right and duty to defend the insured against any 'suit' seeking those damages" but that Hallmark had "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." An exclusion in the Hallmark policy provided that "[t]his insurance does not apply to: . . . 'Property damage' to Personal property in the care, custody or control of the insured."

Unitrin issued a commercial vehicle policy to Manriquez. The policy number was FCNCCA7651545-08, and the policy period was from September 15, 2009, to September 15, 2010. Under the policy, Unitrin agreed to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" The policy provided that Unitrin had "the right and duty to defend any 'insured' against a 'suit' asking

2

for such damages" and that Unitrin had "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." An exclusion in the Unitrin policy provided that "[t]his insurance does not apply to any of the following: . . . 'Property damage' to . . . property owned or transported by the 'insured' or in the 'insured's' care, custody or control."

The underlying suit arose from a train-truck collision at a railroad crossing. On July 16, 2010, a Union Pacific Railroad Company train struck a tractor-trailer rig that had stalled or stopped on the railroad track. At the time, the rig was transporting a crane that belonged to Master Corporation. Union Pacific filed the underlying suit against multiple defendants in an effort to recover for damages to its train. The underlying suit was styled *Union Pacific Railroad Company v. Jaime Flores Parra, Individually and dba Parra Dump Truck & Backhoe; Efrain F. Parra, Individually and dba Parra Construction; Dudley Haynie; and Master Corporation of Texas, Inc.*, Cause No. D-130,001, in the 358th District Court of Ector County, Texas. Master Corporation filed a third-party petition against Manriquez in the underlying suit. Master sought to recover damages related to the alleged total loss of the crane.

In the underlying suit, Master alleged that it requested Manriquez to transport Master's crane from a Master job site to Master's yard. Master had previously used Manriquez for hauling and transporting services. Master alleged that, without its permission or knowledge, Manriquez "unilaterally elected to delegate its responsibility for the transportation of the Master crane to Jaime Flores Parra." Master believed that Jaime Parra operated as an individual or under the company name, Parra Dump Truck and Backhoe.

According to Master's allegations, Jaime Parra went to the Master job site in a 1990 Peterbilt truck that he owned. Jaime Parra was pulling a 2001 Fontaine

lowboy trailer with his truck. The trailer was allegedly owned by Parra Construction Service or Efrain Parra. Master alleged that Jaime Parra loaded its crane onto the trailer. Master alleged that Jaime Parra was not licensed or certified as a motor carrier and that Jaime Parra was not entitled to operate vehicles that transported cargo over roads or highways in Texas.

Master alleged that Jaime Parra hauled the crane toward Master's yard. Jaime Parra attempted to cross a railroad track. As he did so, his vehicle stopped or stalled on the railroad track. A Union Pacific train crashed into the tractor-trailer. Master alleged that the collision resulted in the total loss of its crane.

Master alleged numerous causes of action against Manriquez. First, Master alleged that a bailment relationship existed between it and Manriquez as a result of an agreement between Master and Manriquez that Manriquez would take delivery of Master's crane and deliver it to Master's yard. Master alleged that Manriquez, "through Jaime Parra and Efrain Parra," took delivery of the crane from Master's employees or representatives at the Master job site. Manriquez allegedly accepted delivery of the crane based on its agreement to transfer the crane to Master's yard and with the understanding that the crane would be returned to Master. Master alleged that Manriquez owed it a duty to deliver the crane to it in the same condition that the crane was in when it was initially delivered to Manriquez. Manriquez did not deliver the crane to Master in its original condition but, instead, delivered it to Master in an alleged "essentially worthless condition." Therefore, Master alleged that Manriquez breached the bailment agreement.

Master also alleged a breach of contract claim against Manriquez. Master alleged that it entered into an agreement with Manriquez that Manriquez would travel to the Master job site, load the crane onto its trailer, transport the crane to the Master yard, and return the crane to the Master yard in its same condition. According to Master, Manriquez breached the agreement "by failing to transport

4

the crane through the use of its own equipment, by hiring, employing or retaining Jaime Parra to perform the transportation services, and by failing to deliver the crane to Master in the condition in which it was originally found at the Master job site."

Master also alleged a negligent hiring claim against Manriquez. Master alleged that Manriquez was negligent in a number of respects by retaining the services of Jaime Parra to perform the transportation job.

Master alleged that Manriquez was liable to it for negligent acts or omissions of Jaime Parra under a respondeat superior theory. According to Master's allegations, "on the occasion in question, Jaime Parra was acting pursuant to the instructions of Manriquez and was either in the course and scope of employment with Manriquez, employment [sic] as a subcontractor of Manriquez, or in the furtherance of the business of Manriquez, or a combination of any or all of the aforesaid."

Master also alleged a fraud and misrepresentation claim against Manriquez. This claim related to allegations that Manriquez failed to disclose to Master that the transportation job would be performed by an "incompetent, unlicensed, uncertified and uninsured person or firm." Master also alleged a claim against Manriquez under the Texas Deceptive Trade Practices Act. Master alleged that Manriquez made representations and misrepresentations and that it engaged in acts or practices in violation of the DTPA.

Master sought to recover damages for the alleged total loss of its crane. Master also sought to recover its attorney's fees.

Manriquez requested Hallmark and Unitrin to defend it in the underlying suit. In response, Hallmark and Unitrin asserted, among other things, that Master's allegations were excluded from coverage by their respective insurance policies because the allegations fell within the care, custody, or control exclusions in the

5

policies. Therefore, Hallmark and Unitrin denied Manriquez's request for a defense in the underlying suit.

Manriquez filed this declaratory judgment action. Manriquez filed a motion for summary judgment on its claims that Hallmark and Unitrin had a duty to defend it in the underlying suit. Manriquez asserted that the crane was not in its care, custody, or control at the time of the accident but was, instead, in Jaime Parra's care, custody, or control. Therefore, Manriquez argued that Master's allegations did not fall within the care, custody, or control provisions in the policies. The insurance companies filed competing motions for summary judgment. Following a hearing, the trial court granted Manriquez's motion and denied the insurance companies' motions. In its judgment, the trial court ordered that "Defendants shall provide a defense for the Plaintiff in Cause No. D-130,001 . . . based upon the allegations asserted against Manriquez Trucking by Master Corporation seeking damages to the crane owned by Master Corporation." The trial court awarded Manriquez $20,768.50 for attorney's fees as well as conditional attorney's fees in the event of an appeal. Hallmark and Unitrin appeal from the trial court's judgment.

Hallmark contends in its sole point of error that the trial court erred when it granted Manriquez's motion for summary judgment and when it denied Hallmark's motion for summary judgment. Specifically, Hallmark contends that it had no duty to defend Manriquez in the underlying suit because Master's allegations fell within the care, custody, or control exclusion in the Hallmark policy and because the allegations fell within the auto use exclusion in the Hallmark policy. Unitrin contends in two appellate issues that the trial court erred when it granted Manriquez's motion for summary judgment and when it denied Unitrin's motion for summary judgment. In its first issue, Unitrin contends that it had no duty to defend Manriquez in the underlying suit because Jaime Parra was not an insured

and the tractor and trailer involved in the collision were not insured vehicles under the Unitrin policy. In its second issue, Unitrin contends that it had no duty to defend Manriquez because Master's allegations fell within the care, custody, or control exclusion in the Unitrin policy. Both insurance companies contend that the trial court erred by awarding attorney's fees to Manriquez.

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, the parties file competing motions for summary judgment and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Valence Operating*, 164 S.W.3d at 661; *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988).

When determining whether an insurer has a duty to defend, we follow the eight-corners rule, which is also known as the complaint-allegation rule, by looking at the four corners of the third-party plaintiff's petition for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). The eight-corners rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination. *Id.*

The duty to defend is broader than, and distinct from, the duty to indemnify. *Zurich Am.*, 268 S.W.3d at 490; *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). The duty to defend does not depend on the truth or falsity of the third-party plaintiff's allegations. *Zurich Am.*, 268 S.W.3d at 491. When applying the eight-corners rule, a reviewing court interprets the allegations

7

in the third-party petition liberally in favor of the insured and resolves any doubts regarding the duty to defend in favor of the insured. *Id.* We also consider inferences that logically flow from the facts alleged in the petition. *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A third-party plaintiff's factual allegations that could potentially support a covered claim are all that is needed to invoke the insurer's duty to defend. *GuideOne Elite*, 197 S.W.3d at 310. If the third-party petition includes even one covered claim, the insurer must defend the entire suit. *Legacy of Life*, 370 S.W.3d at 380.

In our analysis, we must focus on the third-party plaintiff's factual allegations that show the origin of the damages rather than on the legal theories alleged. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). If the third-party plaintiff does not allege facts in its petition that are within the scope of insurance coverage, an insurer has no duty to defend the insured in the suit. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). If the third-party plaintiff in the underlying lawsuit alleges only facts for which coverage would be excluded by the policy, then the insurer has no duty to defend the suit. *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982); *Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 169 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In determining whether there is a duty to defend, courts may not read facts into pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. *Nat'l Union Fire Ins.*, 939 S.W.2d at 142; *Cont'l Cas. Co.*, 365 S.W.3d at 169. The duty to defend does not extend to allegations, true or false, that have not been made. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009).

In the underlying suit, Master alleged that a bailment agreement existed between it and Manriquez. To create a bailment, there must be (1) delivery of personal property from one person, the bailor, to another, the bailee, for a specific purpose; (2) acceptance of delivery by the bailee; (3) an express or implied contract between the parties that the specific purpose will be realized; and (4) an agreement between the parties that the property will be either returned to the bailor or dealt with according to the bailor's direction. *State v. $281,420.00 in U.S. Currency*, 312 S.W.3d 547, 551 (Tex. 2010). A bailment relationship requires the bailee to take possession and control of the bailor's personal property. *Id.*; *Delaney v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.). We note that the purpose of care, custody, or control exclusions in insurance policies is to exclude liability for property damage to property that is held under a bailment. *See Mich. Millers Mut. Ins. Co. v. DG & G Co.*, 569 F.3d 807, 811 (8th Cir. 2009); *Harry Winston, Inc. v. Travelers Indem. Co.*, 366 F. Supp. 988, 991 (E.D. Mo. 1973).

Applying the eight-corners rule, Master alleged the essential facts necessary to establish that a bailment relationship existed between it and Manriquez. According to Master's allegations, Manriquez agreed to take delivery and possession of the crane. Master alleged that Manriquez accepted delivery of the crane at the Master job site "through Jaime Parra and Efrain Parra" and that "Jaime Parra was acting pursuant to the instructions of Manriquez and was either in the course and scope of employment with Manriquez, employment [sic] as a subcontractor of Manriquez, or in the furtherance of the business of Manriquez, or a combination of any or all of the aforesaid." Manriquez contends on appeal that Master's allegations support an inference that an independent contractor relationship may have existed between Manriquez and Jaime Parra. However, this

suggested inference is unreasonable in light of Master's allegations that Manriquez accepted delivery of the property as bailee.

Based on Master's factual allegations, Manriquez took possession and control of Master's crane in the capacity of bailee. *$281,420.00 in U.S. Currency*, 312 S.W.3d at 551; *Delaney*, 272 S.W.3d at 839. Also based on Master's allegations, the crane remained in the care, custody, or control of Manriquez at the time of the accident. Because Master alleged that the crane was in Manriquez's care, custody, or control at the time of the accident, Master's allegations fall within the care, custody, or control exclusions in the subject insurance policies. Therefore, we conclude that Hallmark and Unitrin do not have a duty to defend Manriquez in the underlying suit. The trial court erred when it granted Manriquez's motion for summary judgment and when it denied Hallmark's motion for summary judgment. At this time, it would be premature for us to rule on the issue of whether a duty to indemnify could arise under the insurance policies. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219–20 (Tex. 2011); *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009). Therefore, we do not decide the duty-to-indemnify issue.

Hallmark's point of error is sustained to the extent that Hallmark contends that it had no duty to defend Manriquez in the underlying suit because Master's allegations fell within the care, custody, or control exclusion in the policy. Unitrin's second issue is sustained. Based on these rulings, we need not address the remainder of Hallmark's point and Unitrin's first issue. TEX. R. APP. P. 47.1.

We reverse the judgment of the trial court, and we render judgment that Hallmark and Unitrin do not have a duty to defend Manriquez in the underlying suit. The Uniform Declaratory Judgments Act (UDJA) allows for the recovery of attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). An

10

award of attorney's fees is committed to the discretion of the trial court. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Because we reverse the trial court's judgment, we also reverse the trial court's award of attorney's fees to Manriquez. We remand the issue of an award of attorney's fees to the trial court for further proceedings consistent with this opinion.

JIM R. WRIGHT
CHIEF JUSTICE

November 27, 2013

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.