486 A.2d 1330

**Mary Margaret HUFFMAN, Appellant,**

v.

**AETNA LIFE AND CASUALTY COMPANY, a corporation.**

Superior Court of Pennsylvania.

Argued April 11, 1984.

Filed Nov. 23, 1984.

Reargument Denied Jan. 24, 1985.

Petition for Allowance of Appeal Denied July 10, 1985.

Samuel J. Pasquarelli, Pittsburgh, for appellant.

Alan Shapiro, Pittsburgh, for appellee.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal from an Order which granted the appellee's motion for summary judgment. Appellant's husband, the late Arthur Huffman, was employed by the Western Pennsylvania Water Company, which provided its employees with a group hospitalization insurance policy issued by the appellee, the Aetna Life and Casualty Company. For various periods of time during 1977 and 1978, appellant's husband was confined at the Washington Hospital Extended Care Facility. The expenses incurred during the periods of confinement were slightly over $8,000. After appellant had made demand, appellee refused to pay for these expenses, claiming that the Washington Hospital Extended Care Facility was not a "hospital" within the meaning of the insured's policy. Appellant then instigated suit against the appellee, after which the appellee filed a petition to transfer the case to the arbitration docket. This petition was granted, and the arbitrators decided in favor of the appellant in the amount of slightly over $4,000. The appellee appealed the arbitrators' decision. A deposition was taken of Mary McHugh, the administrator of the Washington Hospital Extended Care Facility. The appellee then filed a motion for summary judgment. The trial court, agreeing with the appellee that the Washington Hospital Extended Care Facility could not be regarded as a "hospital," granted the summary judgment motion. Because we

see the meaning of "hospital" under these circumstances as ambiguous and because the trial court did not sufficiently consider the expectations of Arthur Huffman as a policy-holder, we reverse.

 At the outset of this opinion, we emphasize the standards which are to be followed in determining whether a summary judgment motion should be granted. First, summary disposition of a case is permitted only in the "clearest of cases." *Hankin v. Mintz*, 276 Pa.Super. 538, 540, 419 A.2d 588, 589 (1980). Second, for a summary judgment to be upheld, there can be no genuine issues of fact and the moving party must be entitled to judgment as a matter of law. *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983). The case at bar was not among the "clearest of cases" ripe for summary judgment. Nor was the appellee entitled to judgment as a matter of law.

 The task at hand is to determine whether the Washington Hospital Extended Care Facility can be regarded as a "hospital" as defined in the insurance policy. We begin this task by examining the policy to ascertain the intentions of the parties involved in the insurance agreement. *Standard Venetian Blind Co. v. American Empire Insurance*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). In its policy, the appellee used seven elements to define "hospital." [1] Reproduced Record at 88a. Individual analysis of these elements sheds considerable light on the intentions of the parties.

1. Definition of "hospital" in appellee's policy:
 "Hospital" means an institution which
 a. is licensed as a hospital (if hospital licensing is required where it is situated),
 b. is open at all times,
 c. is operated primarily for the medical treatment of sick and/or injured persons as inpatients,
 d. has a staff of one or more licensed physicians available at all times,
 e. provides continuous 24-hour nursing service by graduate registered nurses (R.N.),
 f. provides organized facilities for diagnosis and major surgery, and
 g. is not primarily a clinic, nursing home, rest home, convalescence home or similar establishment.

The Washington Hospital Extended Care Facility meets the requirements of elements "b" through "e" in the policy's definition of "hospital." Ms. McHugh's testimony establishes that the Facility is, and was at the time of Mr. Huffman's confinement, open at all times and operated primarily for treatment of inpatients. Reproduced Record at 38a, 35a–36a, respectively. She also testified that physicians are and were available at all times and that a graduate registered nurse is and was present throughout each day. Reproduced Record at 42a–45a, 43a–44a, respectively.

Appellee contends that the Facility fails to meet the requirement of the next element, that to be a "hospital" an institution must provide "organized facilities for diagnosis and major surgery." Reproduced Record at 88a, 10(f). As authority for its position, appellee relies on *Taylor v. Phoenix Mutual Life Insurance Company*, 453 F.Supp. 372 (E.D.Pa.1978), and *Kravitz v. Equitable Life Assurance Society of U.S.*, 453 F.Supp. 381 (E.D.Pa.1978), two other cases which applied Pennsylvania law to resolve the issue of whether an institution qualified as a "hospital" as defined in the applicable insurance policy. Close analysis of these cases, however, reveals that they are factually dissimilar to the case at bar.

In *Taylor*, for instance, the plaintiff had been injured in a motorcycle accident, was hospitalized, and then transferred to the Moss Rehabilitation Hospital. *Taylor v. Phoenix Mutual Life Insurance Company, supra.* Adjacent to Moss was the Albert Einstein Medical Center, a "general" hospital. 453 F.Supp. at 376. But Moss and Einstein were "totally separate" corporate entities. 453 F.Supp. at 373. In addition, Einstein had a separate medical staff from Moss. 453 F.Supp. at 376. The Court entered summary judgment on behalf of the defendant-insurer because Moss was not a "short-term, acute general hospital" nor did it have "organized departments of medicine and major surgery" as required by the policy's definition of "hospital." 453 F.Supp. at 378.

In *Kravitz*, the plaintiff's daughter had been institutional-ized at the Delaware Valley Mental Health Foundation. *Kravitz v. Equitable Life Assurance Society of U.S., supra.* The Foundation had a "Memorandum of Under-standing" with the Doylestown Hospital to the effect that Foundation patients requiring hospitalization could be quickly transferred to the Doylestown Hospital. But again, the Foundation and the Doylestown Hospital were separate institutions. The defendant-insurer's summary judgment motion was also granted in *Kravitz*, since the policy's definition of "hospital" required that a registered nurse be on duty at all times and that surgical facilities exist "on the premises." 453 F.Supp. at 385. The Foundation did not have a registered nurse present at all in the evenings nor did it have any surgical facilities "on the premises." The plaintiff in that case was consequently denied relief.

Appellee suggests in its brief that, reading *Taylor* and *Kravitz* together, one may "assume" that an institution which merely has access to surgical facilities cannot qualify as a "hospital" since surgical facilities are not directly available at that institution. We should not, however, on a motion for summary judgment make such an assumption. In *Taylor*, Moss did not qualify as a hospital because it did not have "organized departments of medicine and major surgery." 453 F.Supp. at 379. This is a more demanding requirement than that in the appellee's policy which re-quires only that facilities for surgery be provided. Repro-duced Record at 88a, 10(f). Furthermore, in granting sum-mary judgment, the *Taylor* court relied heavily on the fact that Moss itself was not a general hospital but was primari-ly an institution for rehabilitative care. 453 F.Supp. at 379–380. The question of surgical facilities was merely incidental to the disposition of the case. The policy in *Kravitz*, on the other hand, explicitly provided that a "hos-pital" have surgical facilities "on the premises." This was also a more demanding requirement regarding surgical facilities than that in the appellee's policy.

One cannot suddenly deduce, after reading *Taylor* and *Kravitz*, that mere access to surgical facilities is insufficient to meet the requirement of a provision concerning facilities for surgery. No such rule can be derived from *Taylor* and *Kravitz* because the U.S. District Court disposed of those cases by considering generally the insurance policies involved and the circumstances surrounding the insurance agreement. Consideration of surgical facilities corresponded to the requirements of the unique policies involved in the cases. The Court did not explicitly or implicitly say that an institution which shared surgical facilities could not qualify as a "hospital" under the terms of *any* insurance policy. In the situation here presented, the policy's requirement regarding surgical facilities is markedly different, as is the relationship between the entities sharing these surgical facilities.

The Washington Hospital Extended Care Facility is, according to Ms. McHugh's testimony, a department of the Washington Hospital. Reproduced Record at 63a. The Washington Hospital owns and controls the Washington Hospital Extended Care Facility. Reproduced Record at 29a–30a. These facts serve to distinguish the appellant's case from *Taylor* and *Kravitz*. Moss and the Foundation were merely affiliated with other hospitals. They were neither a department of a hospital nor a subordinate to a hospital as the Facility is in this case and was in 1977–1978.

Furthermore, the insurance policies in *Taylor* and *Kravitz* contained more demanding requirements regarding the provision of surgical facilities. Here, Ms. McHugh testified that organized facilities for major surgery were available to patients at the Washington Hospital Extended Care Facility. Reproduced Record at 59a. This is sufficient to establish that the Facility is able to provide facilities for surgery as required by element "f" of the policy definition of "hospital." Reproduced Record at 88a, 10(f). Appellee argues that Washington Hospital's surgical facilities are "available" to the Washington Hospital Extended Care Facility just as they would be available to any other nursing home in Washington County. The surgical facilities might

well be available to other institutions, but none of those institutions is owned and controlled by the Washington Hospital. The Washington Hospital Extended Care Facility is therefore an institution which provides its patients with organized facilities for major surgery and as such satisfies the requirements of element "f" in the policy's definition of "hospital."

The next element, "g," used to define "hospital" states that the institution which the insured enters cannot be "primarily a clinic, nursing home, rest home, convalescence home or *similar establishment* [emphasis added]." Reproduced Record at 88a. Careful reading of this element gives insight with respect to the insurer's intentions in entering into this contractual agreement. Policyholders were not to expect coverage for expenses incurred while residing at nursing homes or similar establishments. But Ms. McHugh testified that she would not call the Washington Hospital Extended Care Facility a place for convalescence or rest. Reproduced Record at 39a–40a. Indeed, when asked whether the Facility itself should be characterized as a rest-convalescent type of home or as a hospital, Ms. McHugh responded that the Facility was closer to a hospital-type classification. Reproduced Record at 67a. This establishes, first, that the Washington Hospital Extended Care Facility was not an establishment similar to a nursing, rest, or convalescent home, and second, that the degree of skilled care available at the Facility qualified it as an institution outside that set of establishments to which the appellee did not intend to extend coverage.

Finally, the first element, "a," of appellee's "hospital" definition demands that a hospital be "an institution which is licensed as a hospital." Reproduced Record at 88a, 10(a). The record shows that the Washington Hospital Extended Care Facility itself is not licensed as a hospital.

█ We recognize and acknowledge that this Court cannot create a doubt for the purpose of resolving it in favor of the insured, and that where language in an insurance contract is clear and unambiguous, Pennsylvania courts must give effect to that language. *McCowley v. North Ameri-*

*can Accident Insurance Company,* 150 Pa.Super. 540, 29 A.2d 215 (1943), *Standard Venetian Blind Company v. American Empire Insurance,* 503 Pa. 300, 469 A.2d 563 (1983). Furthermore, an insurer may draft a policy with explicit exclusions and the Court will uphold the plain meaning of the exclusions since a policyholder cannot reasonably expect unlimited coverage in the face of an explicit, unambiguous limitation.

In determining, however, whether a term in an insurance policy is unambiguous and clear, the term must be considered in the context of the entire policy. *Garber v. Travelers Insurance Companies,* 280 Pa.Super. 323, 421 A.2d 744 (1980). Considering this policy in its entirety, one must conclude that, under these circumstances, the requirement that an institution be licensed as a hospital is ambiguous. The ambiguity involved in the licensing requirement is that one cannot say with substantial certainty whether the Washington Hospital Extended Care Facility itself must be licensed as a hospital, when it is already a department of a fully licensed hospital. It would seem that a license for a hospital may apply to all of the hospital's departments. Arguably, then, a department of a licensed hospital has already met a requirement that it be "an institution which is licensed as a hospital." In any event, the question of whether, as a prerequisite to coverage under the appellee's policy, the Washington Hospital Extended Care Facility itself would have to be licensed as a hospital is unclear under these circumstances. When an ambiguity is found in an insurance policy provision, that provision must be construed in favor of the insured and against the insurer, the drafter of the agreement. *Standard Venetian Blind Company v. American Empire Insurance, supra.*

When interpreting an insurance contract, or any type of contract for that matter, a technical interpretation of the contract's terms cannot be used to defeat the reasonable expectations of the parties. The language of the Pennsylvania Supreme Court in the case of *Collister v. Nationwide Life Insurance Company* is applicable to the situation at hand:

The reasonable expectation of the insured is the focal point of the insurance transaction involved here. Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. 479 Pa. 579, 594, 388 A.2d 1346, 1353 (1978).

Arthur Huffman was admitted to the Washington Hospital Extended Care Facility. He received, as all entering patients do [Reproduced Record at 48a–49a], a pamphlet which informed him that "no one has a desire to be hospitalized" and that the Washington Hospital Extended Care Facility "is a department of the Washington Hospital." Reproduced Record at 80a. Imagine the chagrin of one who was admitted to the Facility assuming that his insurance would cover the expenses incurred, only to learn that his insurance would not cover those expenses solely because he was in a hospital department which itself was not licensed as a hospital.

The issue in this case, therefore, which underlies the technical problem of interpreting the policy's licensing requirement is whether Mr. Huffman, at the time of contract formation, could have reasonably and actually believed, after he had read the policy's definition of "hospital," that the policy's coverage would extend to the Washington Hospital Extended Care Facility.

■ Analysis of the insured's reasonable expectations, as well as an interpretation of the policy's definition of "hospital," will lead to a just resolution of this dispute. The trial court erred in entering judgment as a matter of law for the appellee. It is simply not "clear" that the appellee did not intend to extend its coverage to an institution which, like the Washington Hospital Extended Care Facility, was a department of a fully licensed hospital. To aid the trial court in ascertaining what the status of the Washington Hospital Extended Care Facility was and what Mr. Huffman could reasonably have expected in entering that facility, testimony regarding several matters will be helpful. First, why would a Washington Hospital Extended Care

Facility patient be eligible for Medicare payments when a nursing home resident would not be? Second, what is the significance of the Pennsylvania Department of Health's grant of a license to the Washington Hospital to operate a "Health Care Facility?" Is this an acknowledgement that the Facility will be operated as a part of the Washington Hospital, or the issuance of a license to establish a separate institution? Third, further testimony on the actual amount of administering and "controlling" which the Washington Hospital does with respect to the Washington Hospital Extended Care Facility will be helpful in determining whether the Facility is actually separate from the Hospital, such that the Facility itself would have to be licensed as a hospital before one could reasonably expect it to be covered under the terms of the appellee's policy.

Thus a full trial on the merits is in order so that the trial court can properly interpret the insurance agreement between the parties. The order granting summary judgment is therefore reversed and the case remanded for further proceedings not inconsistent with this opinion.

Jurisdiction relinquished.

POPOVICH, J., dissents.