## Keen Leasing, Inc. v. Fireman's Fund Insurance Companies

*Thomas J. Williams,* for plaintiff.
*Karl R. Hildabrand,* for defendant.

HESS, *J.,* May 12, 1986—Plaintiff is in the business of leasing over-the-road tractors and trailers and operates a large garage at its facility. At times relevant to the instant case, Keen leased a number of tractors to Food Service Specialists, Inc., under long-term and full-service leases. Pursuant to its agreement with Food Service Specialists, Inc., all maintenance and repairs to the rented trucks were done by Keen at its garage. When repairs were necessary, trucks were brought to Keen's facility either by employees of the lessee or by mechanics employed by Keen.

On December 12, 1982, one of plaintiff's employees was returning to the Keen garage with a truck under lease to Food Service Specialists, Inc., when he was involved in a collision. Both Keen and its mechanic were thereafter sued in Cumberland County. Keen notified its insurer, Fireman's Fund Insurance Companies, making a demand that the latter defend and indemnify against the claim of the injured party. Fireman's Fund has refused Keen's demand, citing an exclusion from coverage under its policy.

Plaintiff has commenced this action for declaratory judgment seeking a determination of insurance coverage under policy no. 2-82-MXX-68202267. Fireman's Fund has answered, denying that coverage was provided under its policy and setting forth exclusions which would preclude coverage. After the taking of depositions and the accomplishment of additional discovery, both parties have filed motions for summary judgment.

There is no dispute that at the time of the above accident Keen was insured under the above-mentioned policy. Included in this coverage was a garage policy providing for liability insurance covering "any auto." The portfolio attached to the garage policy declarations gives no explanation of what is meant by "any auto" but does define "auto" as "a land motor vehicle, trailer or semi-trailer." The portfolio describes its liability coverage as follows:

"1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from garage operations.

"2. We have the right and the duty to defend any suit asking for these damages. However, we have no duty to defend suits or bodily injury or property damage not covered by this policy. We may investigate and settle any claim or suit as we consider appropriate. Our payment of the liability insurance limit ends our duty to defend or settle."

The policy then lists 14 exclusions to this coverage. These include:

"7. Any covered auto while leased or rented to others. This exclusion does not apply to a covered auto you rent to one of your customers while his or her auto is left with you for service or repair."

Simply stated, the issue presented on motion for summary judgment is whether the liability insur-

ance contained in the garage policy portfolio provides coverage with respect to the accident which occurred on December 12, 1982.

## DISCUSSION

The motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. It should, however, be granted only in the clearest cases where the right is clear and free from doubt. Thomas Coal Company v. Pike Coal Company, 488 Pa. 198, 412 A.2d 466 (1979). The issues in this case are susceptible to resolution · by summary judgment since the construction of an insurance contract is a question of law. Garber v. Travellers Insurance Companies, 280 Pa. Super. 323, 421 A.2d 744 (1980).

The principles governing the interpretation of a contract of insurance were stated in Standard Venetian Blind Company v. American Empire Insurance Company, 503 Pa. 300, 469 A.2d 563 (1983):

"The task of interpreting a contract is generally performed by a court rather than by a jury. See Gonzalez v. United States Steel Corporation, 484 Pa. 277, 398 A.2d 1378 (1979); Community College of Beaver County v. Society of the Faculty, 473 Pa. 576, 375 A.2d 1267 (1977). The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. See Mohn v. American Casualty Company of Reading, 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.

See Mohn v. American Casualty Company of Reading, supra. Where, however, the language of the policy is clear and unambiguous, a court is required to give effect to that language. See Pennsylvania Manufacturers' Association Insurance Company v. Aetna Casualty Insurance Company," 426 Pa. 453, 233 A.2d 548 (1967).

We are mindful that an insurance policy must be read in its entirety and its words are to be given their plain and proper meanings. Where the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy. Monti v. Rockwood Insurance Company, 303 Pa. Super. 473, 450 A.2d 24 (1982). A court should read the policy provisions to avoid ambiguities, if possible, and not torture language to create them. A court should not rewrite terms of a policy or give them a construction in conflict with the accepted and plain meaning of language used in the policy. Monti v. Rockwood Insurance Company, supra, at 476, 450 A.2d at 25-26. The foregoing are principles of construction similarly summarized in Stambaugh v. Insurance Company of North America, 36 Cumb. L.J. 1 (1985).

Fireman's Fund does not dispute the fact that liability coverage would exist were it not for the exclusion listed above. Read in isolation one could conclude that the exclusion applies to the underlying accident inasmuch as the vehicle was subject to a long term lease and could be considered to have been "leased or rented." In addition, the truck having been leased under an agreement requiring the lessee to insure the truck, it could be presumed that liability had been "assumed under any contract or agreement" under exclusion number one of the portfolio. However, this surface analysis is insufficient for a proper resolution of this case. "A party

658

cannot lift one clause out of an insurance contract and attach a meaning to it considered in isolation." Harbor Insurance Company v. Lewis, 562 F.Sup. 800, 805 (1983). Thus, "in determining whether a term in an insurance policy is unambiguous and clear, the term must be considered in the context of the entire policy." Huffman v. Aetna Life and Casualty Company, 337 Pa. Super. 274, 282, 486 A.2d 1330, 1334 (1984).

We are satisfied that, when considered in the contect of the whole document, the exclusion regarding *leased or rented* autos is ambiguous. The policy itself is entitled a *Garage Policy*. Premiums for this coverage were calculated on the basis of total remuneration paid to all employees of the garage operation. Garage Policy, p. 3, Item 5; Strite Deposition, p. 62. To give the meaning to the exclusion of leased vehicles which Fireman's Fund asserts would be to eliminate liability coverage for the greater part of the operation sought to be insured. The repair and maintenance of vehicles leased by Keen was the primary purpose, if not the very raison d'etre, of the garage. See Strite Affidavit; Strite Deposition, pp. 32, 36; Jesse Keen Deposition, pp. 9-11, 18; Christopher A. Durborow Deposition, p. 6.

F. Eugene Strite, the Fireman's Fund insurance agent who was the agent who obtained the insurance policy for Keen, stated that if the coverage had been as Fireman's Fund now asserts the premiums paid by Keen *would have been substantially less.* The meaning, therefore, of the phrase *leased or rented* now asserted by the insurer is different from the meaning when considered in the context of the entire insurance contract. In other words, it is ambiguous.

While made in the context of a holding which is not relevant to the matter sub judice, we note the

following language in Collister v. Nationwide Life Insurance Company, 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied 439 U.S. 1089 (1979):

"The reasonable expectation of the insured is the focal point of the insurance transaction involved here. E.g., Beckham v. Travellers Insurance Company, 424 Pa. 107, 117-118, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance-purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies or whatever), the public has a right to expect that they will receive something of comparable value in return for the premiums paid."

In this case, the fact that the premiums charged were substantially greater than the coverage which Fireman's Fund now alleges was available supports plaintiff's argument that there is ambiguity or, at the very least, confusion as to what was meant by the exclusion of *leased* vehicles.

In determining whether an ambiguity exists in an insurance policy, the court may consider whether alternative or more precise language, if used, would have put the matter beyond reasonable doubt. Celley v. Mutual Benefit Health and Accident Association, 229 Pa. Super. 475, 482, 324 A.2d 430, 434 (1974); Hofing GMC Truck Inc. v. Kay Wheel Sales Company, 543 F.Supp. 414, 419 (1982). Having said that *leased or rented* vehicles were excluded from liability-insurance coverage, we note that nowhere in the policy are either of these terms defined. Black's Law Dictionary defines *rent* as "consideration paid for use or occupation of property." The same reference defines a *lease* as a "grant of permissive use." Nonlegal dictionaries, as well,

define the terms as requiring use and possession by a lessee.

In this case the vehicle involved was subject to a lease agreement but was not, at the time of the accident, in the possession of the lessee. By substituting language such as "under a written leasing agreement" the insurer could have put the applicability of the exclusion beyond a reasonable doubt.

Attached as an exhibit to one of the affidavits taken on behalf of Fireman's Fund is a copy of the garage policy and portfolio which contains an endorsement for "leasing or rental concerns — contingent coverage." This optional coverage offered by Fireman's Fund was not made a part of Keen's garage policy. It is relevant because it contains a definition of "leased auto" for the purpose of the endorsement:

" 'Leased auto' means an auto you lease to a lessee under a leasing agreement for one year or more for which the leasing agreement requires the lessee to provide primary insurance for you." Providing this definition in the main part of the policy would have resolved any ambiguity. This Fireman's Fund elected not to do.

Finally, a provision of an insurance contract may be deemed ambiguous "if reasonably intelligent persons, considering it in the context of the whole policy, would differ regarding its meaning." Musisko v. Equitable Life Assurance Society, 344 Pa. Super. 101, 496 A.2d 28, 31 (1985). This is certainly the case here. W. Eugene Strite, the Fireman's Fund insurance agent, stated that he was "shocked and surprised" that the exclusion was applied to deny coverage. Strite Affidavit; Strite Deposition, p. 63. He also stated that he knew of no other insurance company that applied Fireman's Fund's interpretation to the exclusion. Id. That reasonable minds dif-

fered concerning the meaning of the exclusion is further borne out by the *amendatory endorsement* issued by Fireman's Fund. Strite Affidavit Exhibit A. This endorsement was issued after Fireman's Fund had denied coverage for the underlying case in this suit. The endorsement states:

"Limited Coverage for Leased Vehicles Amendatory Endorsement"

"Liability insurance afforded under part four of this policy is hereby amended to include coverage for vehicles leased or rented by you to others when such vehicles are temporarily in your care for service or repair. This includes damages because of bodily injury or property damage caused by an accident and resulting from your garage operations."

No additional premium was charged for this endorsement which, according to the position earlier taken by Fireman's Fund, would have greatly expanded coverage. We hasten to add that the amended endorsement may not be deemed an admission of coverage by Fireman's Fund. It is simply another illustration of the fact that reasonable persons could differ as to the meaning of the exclusion formerly in effect.

Having found that a clear ambiguity exists within the text of the exclusion, we have no alternative but to construe same liberally in favor of the insured. Reading the policy as a whole we are compelled to the conclusion that there was coverage of the vehicle at the time it was being driven by Keen's employee and in the course of the garage operation. We are satisfied that there are, otherwise, no substantial questions of fact.

Under Pennsylvania's Declaratory Judgment Act, a party interested in a contract whose rights are affected by it, may have determined any question of

662

construction or validity arising out of the contract, and obtain a declaration of rights thereunder. 42 Pa.C.S. §7533. Accordingly, the following order is entered.

## ORDER

And now, this May 12, 1986, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted, and it is ordered that Fireman's Fund Insurance Companies must honor the terms of the policy between it and plaintiff, providing collision and liability coverage and fulfilling its obligation and duty to defend and indemnify plaintiff, Keen Leasing, Inc., with respect to the claims and suit of Robert Hinds, Hazel Hinds and Christopher Hinds, and to pay any and all judgments or settlements arising out of said claim.