**Dennis J. TOTEDO, an incompetent, by the UNION NATIONAL BANK OF PITTSBURGH and Gloria A. Totedo, Co-Guardians, Plaintiffs,**

v.

**BANKERS LIFE AND CASUALTY COMPANY, Defendant.**

Civ. A. No. 86–2366.

United States District Court,
W.D. Pennsylvania.

Sept. 23, 1987.

Lester E. Zittrain, Zittrain & Zittrain, Pittsburgh, Pa., for plaintiffs.

Robert B. Brown, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

On November 5, 1986, the plaintiff, Totedo, filed a complaint against the defendant, Bankers Life and Casualty Company (Bankers Life), demanding reinstatement under an insurance policy. In April, 1987, the parties filed stipulations to all the material facts. In July, 1987, the parties filed cross-motions for summary judgment which are now pending before this court.

### Stipulated Facts

Totedo was involved in an automobile accident on April 13, 1983 in which he in-

curred severe injuries. At the time of the accident, Totedo was covered by a Catastrophic Health Expense Policy issued by Bankers Life. Bankers Life made various payments as required by the policy until June 19, 1985, at which time Bankers Life asserted that Totedo was eligible for Medicare. Bankers Life exercised a Renewal Condition, *see infra*, and refused to renew the coverage, instead offering Totedo a Medicare Supplement Policy. Totedo accepted the offer.

As a result of his two years of continuous disability, Totedo met the general eligibility requirements for Medicare under the provisions of Subchapter II of the Social Security Act, 42 U.S.C. § 426(b)(2)(A). However, Totedo's medical expenses were also covered by an automobile no-fault insurance policy. Under 42 U.S.C. § 1395y(b)(1), the no-fault benefits precluded Toledo from collecting Medicare benefits.

The two pertinent parts of the Catastrophic Health Expense Policy read as follows:

### "RENEWAL CONDITIONS—RENEWABLE AT OUR OPTION

... Renewal is also subject to the following:
(A) For adults, subject to the Conversion Privilege, we won't renew coverage beyond: ...
2. The date they become eligible or qualified for benefits under Medicare."

### "CONVERSION PRIVILEGE

A. If this coverage ends because a Family member becomes eligible for Medicare we will issue a new policy to that person. We won't ask that person to prove good health or meet other qualifications. You must apply for it and pay the initial premium. The new policy will be on a form we are then issuing which provides benefits supplementing the hospital benefits that person will have under Medicare."

### Legal Discussion

#### Cross-Summary Judgment Standard

The standard for cross-motions for summary judgments is the same as for individual motions for summary judgment. The court handles cross-motions as if they were two distinct, independent motions. *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968). Thus, in evaluating each motion, the Court must consider the facts and inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976).

#### Insurance Contract Construction

Via a commendable set of stipulations, the parties have narrowed the issues in this case to a single issue of contract construction. The sole issue before this court is whether the renewal clause of the Catastrophic Health Expense Policy is triggered when the insured would be entitled to receive Medicare benefits, but is precluded from collecting those benefits because he is covered by a no-fault insurance policy.

The rules of contract construction for insurance policies are well settled. Several of these rules apply to the instant situation. Pennsylvania has a general policy of effectuating the reasonable expectations of the insured. *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 521 A.2d 920, 926 (1987); *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346, *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978). The reasonableness of the expectations of the insured must be evaluated according to the sophistication of the average policy holder, not one conversant with the many volumes of Couch on Insurance. *Huffman v. Aetna Life & Casualty Co.*, 337 Pa.Super. 274, 486 A.2d 1330 (1984); *United Services Automobile Association v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982 (1986).

Another relevant rule of construction is that the court must construe language that is ambiguous in favor of the insured. In order to determine whether language is ambiguous, the court may con-

sider whether more precise language would have avoided the ambiguity. *Hofing GMC Truck, Inc. v. Kay Wheel Sales Co.*, 543 F.Supp. 414, 419 (E.D.Pa.1982); *Consolidation Coal Co., Inc. v. Liberty Mutual Insurance Co.*, 406 F.Supp. 1292, 1295 (W.D. Pa.1976).

Thus, the issue in this case can be reduced to a consideration of two questions: first, would an average person expect that the language "eligible or qualified for benefits under Medicare," coupled with the Supplemental Coverage conversion option, could result in the termination of his insurance coverage when he was eligible for enrollment but not actually entitled to any benefits; and second, is that same language ambiguous and could the asserted meaning reasonably be expressed in a less ambiguous way?

Precedent

Several other courts have construed similar clauses. While their interpretations are not binding on this court, we will, nonetheless, examine some of those cases. In *Spear v. Life Insurance Company of America*, 112 A.D.2d 904, 493 N.Y.S.2d 322 (1985), the insurance policy under consideration had two pertinent clauses. The first stated that coverage terminated when the insured became eligible for Medicare. The second provided for continued coverage under the policy after Medicare payments commenced, with deductions for benefits actually provided by Medicare.

That court found the two provisions contradictory, and resolved the contradiction in favor of the insured. Consequently, the court refused to allow the insurance company to terminate coverage in spite of the language in the first clause. The policy in the instant case contains similarly contradictory clauses under Bankers Life's interpretation of the renewal clause; the conversion clause describing the supplemental policy certainly anticipates receipt of benefits, even if the renewal clause does not.

In *Kemp v. Republic National Life Insurance Company*, 649 F.2d 337 (5th Cir. 1981), the critical language in the policy read, "With respect to each Insured Person who is eligible for coverage under Medi-

care, a benefit otherwise payable under the Group Policy shall be reduced by the amount of any similar Medicare benefits." The insured was over sixty-five years old, and, thus, entitled to enroll voluntarily in Medicare. The insurance company argued that the language should apply to anyone eligible to enroll, regardless of whether he actually did so. The court found the language ambiguous; although it could be construed as the insurance company advocated, "the average insured—and, we think, the average judge—would construe the policy to this drastic effect only if the words certainly require it." *Id.* at 339. This court finds that the language in the instant case is as ambiguous as the language in *Kemp*.

The Wisconsin Court of Appeals construed the phrase "Medicare Eligible" in *United American Insurance Company v. Office of the Commissioner of Insurance*, 117 Wis.2d 779, 343 N.W.2d 829 (Wis.Ct. App.1983). The court refused to limit the definition to those sixty-five or older, and, instead, construed the phrase to include those persons sixty-five or older and meeting additional federal requirements for Medicare.

In *Fannon v. Travelers Insurance Company*, 548 S.W.2d 460 (Tex.Civ.App.1977), the Texas court construed the phrase "if benefits are provided for such [medical expenses] under Medicare." The plaintiff was eligible for voluntary enrollment in Medicare but chose not to enroll and did not receive any benefits. The plaintiff asserted that the phrase was ambiguous and could reasonably mean that Medicare must actually pay benefits. The court agreed that the phrase was ambiguous, and held that such ambiguity must be resolved in favor of the insured. Consequently, the court construed the phrase to mean that the insured must actually receive the benefits. This court finds that the material language in Mr. Totedo's policy, "eligible or qualified for benefits," is ambiguous and could reasonably mean eligible or qualified to receive benefits, not merely able to enroll in Medicare.

## Conclusion

An examination of the facts in the instant case reveals an ambiguity that compels this court to construe the policy in favor of Mr. Totedo. The phrase, "eligible or qualified for benefits under Medicare," when considered in isolation leads the average reader to the conclusion that one must actually be entitled to receive benefits, not merely to enroll. When the reader proceeds to the conversion privilege provision allowing the insured to take out a policy supplementing the Medicare benefits, his conclusions are confirmed and reinforced. It would be patently unreasonable to expect someone not intimate with the provisions of the Social Security Act to anticipate that his Catastrophic Health policy could be terminated when he was "eligible or qualified for benefits" but not actually eligible or qualified to receive those benefits.

The concepts embodied in the renewal clause are not so complicated that a clear expression of them is impossible given the space constraints of an insurance policy. Many ways exist of expressing the same concepts more clearly, some more efficiently than others. For example, with eleven extra words, the clause could have read, "eligible to enroll in Medicare, even if disqualified from receiving benefits by another provision of the Medicare Statute." Bankers Life could then make the conversion clause consistent with the renewal clause by adding language stating that the conversion to supplemental coverage is available to those participants whose policies have been terminated pursuant to the renewal clause and who actually receive Medicare benefits.

This court realizes that insurance policies would become unwieldy if insurance companies were required to explain in detail the effects of each provision under every possible scenario. Nonetheless, if an insurance company wants a particular clause to enable them to terminate the insured's coverage, the insurance company must use non-technical, unambiguous, understandable language.

For the above stated reasons, this court will grant the plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment.

An appropriate order will be entered.

## ORDER

AND NOW, this 23rd day of September, 1987, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) Defendant's Motion for Summary Judgment is DENIED;

(2) Plaintiffs' Motion for Summary Judgment is GRANTED;

(3) Judgment is entered in favor of the plaintiffs, Dennis J. Totedo, an incompetent, by the Union National Bank of Pittsburgh, and Gloria A. Totedo, co-guardians, and against the defendant, Bankers Life and Casualty Company; and

(4) Interest at the rate of six percent (6%) per annum shall attach to all amounts due the plaintiffs under the Catastrophic Health Expense Policy No. 817,024,881, with such interest commencing sixty (60) days after the rendering or supplying of the particular medical service for which the defendant has been, is now, or may in the future become, responsible.