678 A.2d 802

MADISON CONSTRUCTION COMPANY

v.

The HARLEYSVILLE MUTUAL INSURANCE COMPANY, and Nicholas Ezzi, Brian Murtaugh, Kelran Associates, Inc. and Euclid Chemical Company.

Appeal of the HARLEYSVILLE MUTUAL INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Feb. 26, 1996.

Filed June 20, 1996.

* **Betz Laboratories Inc.**, a chemical manufacturer, has filed an *amicus curiae* brief in support of Madison. Aetna Casualty and Surety Company and The Insurance Environmental Litigation Association have also filed *amicus* briefs in support of Harleysville.

138

William Salzer, Philadelphia, for appellant.

Alan Greenberg, Philadelphia, for appellee.

Lee M. Epstein, Philadelphia, amicus curiae.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, President Judge Emeritus, and DEL SOLE,

BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

CIRILLO, President Judge Emeritus:

Harleysville Mutual Insurance Company (Harleysville) appeals from an order of the Court of Common Pleas of Chester County granting summary judgment in favor of appellee Madison Construction Company (Madison) and requiring Harleysville to defend and/or pay for the defense of a personal injury claim brought against Madison. We reverse.

Kelran Associates, Inc. (Kelran), a contractor performing construction work at the Boeing/Vertol Helicopters plant (Boeing or Boeing/Vertol), hired Madison, a subcontractor, to prepare concrete utility trenches as a part of its work for Boeing. After pouring the concrete, a Madison employee would add a curing agent, known by its tradename, "Eucocure" floor coat,[1] to the poured trench. This agent was applied to the concrete in an enclosed area known as a "construction envelope" which consisted of four sides of polyethylene sheeting erected within a Boeing building. Nicholas Ezzi (Ezzi), a machinist employed by Boeing/Vertol, brought the underlying personal injury action after he was injured within this enclosed area. Ezzi was asked to place a fan in the envelope in order to provide better ventilation from the pungent odor of the curing agent. Upon entering the work area with the fan, Ezzi was overcome by the fumes, became dizzy, and fell into a construction trench where he sustained various injuries.

At the time of Ezzi's accident, Madison was insured by Harleysville under a comprehensive general liability (CGL) policy. Part of this policy included a "pollution exclusion" provision. Harleysville informed Madison that it would not provide coverage for the lawsuit, claiming that Ezzi's accident was excluded by this policy provision. Specifically, Harleysville contended that because Ezzi sustained injuries "as an approximate result of his inhalation of Xylene fumes [from the

1. This floor coat was manufactured and sold by Euclid Chemical Company, a party defendant to the underlying civil action.

floor coating]," the circumstances surrounding the accident fell within the policy's pollution exclusion provision.

Madison subsequently instituted a declaratory judgment action in order to determine whether Harleysville was, in fact, contractually obligated to defend Madison. The parties filed cross-motions for summary judgment and the court granted Madison's motion.[2] Harleysville then appealed to this court, and, in an opinion authored by the Honorable Peter Paul Olszewski, the panel construed the contract in favor of Madison and affirmed the trial court's order.[3] Harleysville then petitioned this court for reargument *en banc*. Harleysville raises the following issues for *en banc* review:

(1) Whether the plain language of the "absolute" pollution exclusion of Harleysville's Commercial General Liability insurance policy unambiguously applies to negate a duty of defense or indemnification for a claim of damages for bodily injury alleged to have been caused by the release and migration of noxious fumes by the insured, Madison Construction Company; and

(2) Whether the existence of conflicting judicial authority in foreign jurisdictions establish *ipso facto* an ambiguity in the "absolute" pollution exclusion so as to confer insurance coverage for liability arising out of the release of noxious fumes notwithstanding the plain language of the insurance policy?

When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment may

2. Specifically, the trial court's order, in part, reads:
   AND NOW this 17th day of November, 1994, it is hereby ORDERED and DECREED that Summary Judgment is GRANTED in favor of plaintiff, Madison Construction Company against defendant The Harleysville Mutual Insurance Company. . . .

3. The remaining panel judges, Judge Cavanaugh and Judge Wieand, concurred and dissented in the result, respectively.

be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

Harleysville claims that the pollution exclusion provision is not ambiguous and must be read strictly, so as to preclude its obligation to cover Madison in the underlying action. We agree.

Harleysville's CGL policy includes the following exclusionary language:

2. **Exclusions.**

\* \* \*

This insurance does **not** apply to:

\* \* \*

**f. (1)** "Bodily injury" ... arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, **release or escape of pollutants:**
**(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;**

\* \* \*

**(d) At or from any premises, site or location on which any insured or any contractors or *subcontractors* working directly or indirectly on any insured's behalf are performing operations:**

(i) if the **pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;**

\* \* \*

The term "pollutant" is defined in the policy as:

[A]ny solid, **liquid,** gaseous or thermal irritant or contaminant, including smoke, **vapor,** soot, **fumes,** acids, alkalis, **chemicals** and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

Emphasis added.

▮   The goal of interpreting an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Gene & Harvey Builders v. Pa. Mfrs. Ass'n,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (citation omitted).   Where a provision of a policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer, the drafter of the policy. *Id.* When a provision of an insurance policy contains language which is clear and unambiguous, however, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins.,* 503 Pa. 300, 469 A.2d 563 (1983). In order to determine whether a term or language in a policy provision is ambiguous, the term or language must be considered in the context of the entire policy. *Garber v. Travelers Ins. Companies,* 280 Pa.Super. 323, 421 A.2d 744 (1980).

The seminal Pennsylvania Supreme Court case regarding the interpretation of contract language is *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 (1924).   The *Gianni* court determined that an alleged oral agreement regarding an exclusive right to sell beverages under a tenant-lessee contract would not be upheld when the written contract did not evidence such a stipulation, as "the *writing* [was] not only the best, but *the only* evidence of [the parties'] agreement." *Id.* (emphasis added).   Similarly, in *Standard Venetian Blind, supra,* despite the insured's lack of knowledge and/or understanding of an exclusion clause in an insurance liability policy,

the court held that because the clause was *clearly* drafted, it was enforceable and effective to preclude coverage for the insured. *Id.* (emphasis added). Furthermore, this court has reiterated that:

> [A]n insurer may draft a policy with explicit **exclusions** and the Court will uphold the plain meaning of the exclusions since a policyholder cannot reasonably expect unlimited coverage in the face of *an explicit, unambiguous limitation.*

*Huffman v. Aetna Life & Cas. Co.,* 337 Pa.Super. 274, 282, 486 A.2d 1330, 1334 (1984) (emphasis added).

It is important to distinguish the Harleysville–Madison exclusionary provision from pollution exclusion provisions found in many other insurance policies. Other provisions often contain the language "into the atmosphere" when describing the area into which a pollutant must escape so that the exclusion applies. Such language, when given its technical effect, will most likely preclude insurance companies from denying coverage for accidents occurring within a confined area because such an occurrence does not result in the release of pollutants "into the atmosphere." *See generally Gamble Farm Inn, Inc. v. Selective Ins. Co.,* 440 Pa.Super. 501, 656 A.2d 142 (1995) (holding that "atmosphere" within meaning of pollution exclusion in CGL policy did not include the release of the pollutant into the air within the insured's building). Additionally, many courts have held this term to be ambiguous, and the exclusion inapplicable, thus resulting in a verdict against the insurer. *Id.*

Many of these same policies also contain provisions which carve out an exception in applying the pollution exclusion when the manner in which the pollutants are emitted is "sudden and accidental." *See Lower Paxton Township v. U.S. Fidelity and Guaranty Co.,* 383 Pa.Super. 558, 557 A.2d 393 (1989) (when evidence of release of pollutants did not support jury finding that there had been a "sudden" discharge, dispersal, release or escape of methane gas from Township landfill into adjoining property owner's home, suit brought by Township against its insurer, for policy coverage of damage to property owner's home, was reversed by court and a judgment

n.o.v. entered for insurance company). Careful review of the present policy at issue, however, does not reveal any language making Harleysville's policy exclusion inapplicable to cases of "sudden or accidental" emissions or limiting it to the release of pollutants "into or upon the land or the atmosphere."

■ Madison states that the true public policy behind a pollution exclusion provision is to prevent the escape of pollutants "into the environment." Consistent with this assertion, it claims that because Ezzi's accident did not involve the escape of fumes into the environment, the exclusionary provision should not be read to apply to the instant case. We follow in the footsteps of this and other jurisdictions that have consistently declined to accept such an argument when the policy language is clear and unambiguous. *See O'Brien Energy Systems v. American Employers' Ins., Co.,* 427 Pa.Super. 456, 629 A.2d 957 (1993), *allocatur denied,* 537 Pa. 633, 642 A.2d 487 (1994); *Lower Paxton,* 383 Pa.Super. at 566–67, 557 A.2d at 397 (citing *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.,* 218 N.J.Super. 516, 528 A.2d 76 (1987), *overruled on other grounds* by *Morton Int'l, Inc. v. General Accident Ins. Co. of Am.,* 134 N.J. 1, 28, 629 A.2d 831, 847 (1993)). Additionally, because the Harleysville–Madison provision contains no such "into the environment" language, we, as a court, will not "convolute the plain meaning of a writing merely to find an ambiguity." *See O'Brien Energy,* 427 Pa.Super. 456, 462, 629 A.2d 957, 960 (1993).

■ Madison makes the additional argument that the "fumes" which caused Ezzi to faint and injure himself are not "pollutants," and, therefore, this accident does not fall within the exclusion provision. Specifically, Madison claims that the sealant, a commonly used "membrane-forming"[4] construction material which it brought onto the helicopter plant in self-contained canisters, was neither an irritant nor a contaminant. In support of its argument, Madison relies on a North Carolina Court of Appeals case, *West American Insurance v.*

---

4. The term "membrane-forming" is used to describe the curing compound's ability to waterproof and facilitate the drying of the cement over which it is poured.

*Tufco Flooring,* 104 N.C.App. 312, 409 S.E.2d 692 (1991). *West American,* which carries no precedential value, held that under a pollution exclusion provision, fumes emanating from a commonly used construction product are not considered irritants or pollutants, and therefore, should not apply to preclude coverage for the insured. We not only disagree with this holding, but we also refuse to provide such a broad exception simply because a product or material is commonly used in construction.

Specifically, we find no merit in Madison's argument which declines to recognize the floor sealant's Xylene fumes as a pollutant. The prior panel of this court, which addressed this same issue, came to the proper conclusion that:

> While the floor-covering material [the Euco Floor Coat] itself was a necessary instrument of Madison's work, the vapors, however unavoidable, were not. They were **an unwanted irritating waste product** of the floor covering, and thus could be construed to fit within the policy's definition of pollution.

This court simply cannot construe the policy language any way other than by finding that the fumes in the instant case were pollutants. First, the language of the exclusion provision clearly states that "fumes" are regarded as a "pollutant." Second, when canisters of a liquid or other compound are brought onto a premises, opened, and the material, upon exposure to the air or after application to a surface, causes noxious fumes to emanate and make persons dizzy, the fumes are clearly pollutants.[5] Fumes are a reactionary product of a

5. The record contains a copy of the manufacturer's "Material Safety" report on this floor coating. The report lists the different physiological effects which may result from inhaling the sealant's vapors. The data which is most crucial to this case states:

> Inhalation: Vapors may be *irritating* and may cause CNS [central nervous system] effects, vertigo, muscular weakness, narcosis, confusion [and] coma.

Additionally, the data sheet lists the different ingredients which comprise the sealant. The first material listed is "aromatic solvent." This solvent contains various chemicals that act as the medium to dissolve the remaining active ingredients in the sealant. The report also states

solid or a liquid which often manifest in the form of a vapor, gas, or smoke. In fact, the dictionary definition of fume is "a smoke, vapor, or gas especially when irritating or offensive." **Webster's New Collegiate Dictionary**, 461 (1981). The fact that the fumes from the floor coating were so strong as to overcome a healthy adult, making him dizzy enough to fall into a trench, compels us to classify the fumes as irritating, and, thus, pollutants under the policy.

Based upon the policy terms, which are the controlling means to discern the intent behind the contract, *Gianni, supra*, we find that the pollution exclusion provision is clear and unambiguous. Ezzi incurred bodily injury from the release of pollutant-fumes at Madison's working site from a product which Madison brought onto the helicopter plant in connection with its contractual obligations with Kelran. We find no need to look further to ascertain the parties' intent in drafting the contract, *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986), or determine if the exclusion provision is reasonably susceptible to different constructions and interpretations. *Gamble Farm, supra.* To do so would unnecessarily create an ambiguity for this court's resolution as well as add extrinsic language to the existing policy between Harleysville and Madison. *O'Brien Energy, supra.*[6] Because we find that

that the primary route of exposure of the sealant is through "inhalation and splashing."

The above data directly contradicts Madison's argument that it did not bring fumes or vapors onto the worksite where Ezzi was injured. In fact, Madison brought a material, classified as a liquid "aromatic," onto the Boeing/Vertol premises which was inhaled by Ezzi, causing him to fall and sustain injuries.

**6.** Having determined that the policy language is unambiguous, we need not address the second issue raised on appeal. Even if we were to address this issue, however, we find that appellee-Madison takes its argument too far by claiming that a conflict in the courts is ***ipso facto*** ambiguous. A panel of this court, in *Gamble Farm, supra*, stated that "more important than the actual holdings [of the other jurisdictions] is the fact that their decisions demonstrate the existence of an ambiguity in the crucial term 'atmosphere' [in a pollution exclusion provision]." The *Gamble Farm* court relied on this court's earlier case, *Cohen v. Erie Indem. Co.*, 288 Pa.Super. 445, 432 A.2d 596 (1981), which held that when several appellate courts from other jurisdictions were split over the interpretation of an identical insurance policy provision defining

the trial court committed an error of law in failing to find that Harleysville was entitled to summary judgment, we must reverse the trial court's order. *Hetrick, supra.*

Order granting summary judgment reversed. We remand and direct the trial court to enter summary judgment in favor of Harleysville Mutual Insurance Company. Jurisdiction is relinquished.

DEL SOLE, J., files a Dissenting Opinion which is joined by CAVANAUGH and BECK, JJ., and McEWEN, President Judge, concurs in the result of Dissenting Opinion by DEL SOLE, J.

DEL SOLE, Judge, dissenting.

In ruling that Harleysville is not required to defend Madison in the underlying suit, the Majority has made a fundamental error by not reviewing the basis for the underlying claim in the personal injury action. It is clear from such a review that

who is a "named insured," this lack of agreement creates "[the convincing] conclusion that the clause in issue is ambiguous as to whether coverage is to be afforded under the fact situation presented." *Id.* at 452, 432 A.2d at 599. Our court, in *Lower Paxton*, 383 Pa.Super. at 573 n. 4, 557 A.2d at 400 n. 4, however, rejected this same argument and refused to hold that where a provision in an insurance policy has been construed in different ways by various courts, that this alone mandates that we find the provision ambiguous.

While we do not invalidate the above reasoning of these cases, we will not improvidently "jump the gun" and avoid analyzing the language of the policy merely because various courts have inconsistently interpreted the policy language. Unlike the facts in *Gamble Farm* and *Cohen*, when the terms of the Harleysville–Madison exclusion provision are given their plain and ordinary meaning, *Ryan Homes, Inc. v. Home Indem. Co.*, 436 Pa.Super. 342, 647 A.2d 939 (1994), we find that the pollution exclusion clearly applies to the circumstances surrounding Ezzi's accident. Furthermore, this court believes that in order to increase predictability and uniformity in the interpretation of pollution exclusion provisions, we must predicate our decisions on the application of the language of the exclusionary clauses to the specific facts presented in each case. Rather than relying on the fact that jurisdictions are split over construing the provisions or that one jurisdictional line of reasoning is better than another, courts must remember to invoke the basic tenet of contract law and look to the writing itself first, before otherwise deciding that a policy is ambiguous. *See generally* Mark J. Manta, *The Absolute Pollution Exclusion: The Inside Story*, **Mealey's Litigation Reports**, Vol. 10, No.3 (November 14, 1995).

a duty to defend exists. Further, the Majority compounds this error when it finds the product at issue to be a "pollutant", as that term is defined in the exclusionary clause of the policy. For these reasons, I dissent.

Initially it must be recalled that a duty to defend is a distinct obligation, which is separate and apart from an insurer's duty to indemnify. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 582, 533 A.2d 1363, 1368 (1987). This obligation to defend arises whenever an injured party files a complaint which may potentially come within the coverage of the policy. *Phico Ins. Co. v. Presbyterian Med. Serv.*, 444 Pa.Super. 221, 225, 663 A.2d 753, 755 (1995) (citing *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410 Pa. 55, 56, 188 A.2d 320, 321 (1963)). The Majority in this case, has failed to appreciate that the question of Harleysville's duty to defend necessitates an examination of the underlying personal injury claim, as well as the policy. The Majority, accepting Harleysville's statement summarizing the underlying claim, concludes that the policy's pollution exclusion applies and Harleysville is not responsible to defend a claim for injuries sustained as an approximate result of the inhalation of Xylene fumes. The underlying claim, however, is not a claim for injuries based upon Madison's use or release of noxious fumes, rather it is a claim based upon the breach of certain duties including a failure to warn.

Included in the record as Exhibit "A" to Madison's Complaint is a copy of the Complaint filed by Nicholas Ezzi which names Madison as a defendant. The Complaint alleges facts which resulted in Ezzi's fall, and claims that Madison is responsible for Ezzi's injuries for the following reasons.

13. The aforesaid incident and the injuries resulting to the Plaintiff, Nicholas Ezzi, occurred solely as a result of the negligence, carelessness and recklessness of the defendants, Brian Murtaugh, Kelran and Madison, who had exclusive control over the supervision of the Construction Project and the application of the chemical curing agent, which said negligence, carelessness, and recklessness consisted of the following:

a. Failing to properly maintain the construction site in a proper and safe manner for all construction personnel and employees of Boeing helicopters;

b. Failing to properly ventilate the work area to avoid the build-up of dangerous fumes that existed;

c. Failing to warn, by either sign or barricade, Boeing Helicopters' employees, including the Plaintiff of the dangerous condition that existed resulting from the application of the concrete curing agent;

d. Failing to warn Boeing Helicopters' employees, like the Plaintiff, of the likely effect of inhaling the noxious fumes that existed;

e. Failing to provide Boeing Helicopters' employees, like the Plaintiff, with protective gear to protect them from the fumes resulting from the application of the curing agent;

f. Failing to provide adequate safeguards to prevent the injury to Plaintiff;

g. Disregarding the safety and rights of the Plaintiff and other persons in the Construction Area;

h. Failing to detect and observe the dangerous condition caused by the application of the concrete curing agent;

i. Failing to properly barricade or plate the hole where Plaintiff fell;

j. Engaging in other liability producing conduct as may become apparent during the course of discovery.

The so-called "pollution" exclusion in the general liability coverage policy issued by Harleysville excludes it from defending or indemnifying claims for "bodily injury" which arise out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." The injuries claimed by Izzi in his Complaint have not been alleged to have resulted from Madison's "discharge" of a pollutant. The claims set forth against Madison in Izzi's Complaint stem from Madison's neglect in failing to warn and protect others from the situation, failing to ventilate the area and failing to cover a hole into which Izzi fell. These alleged negligent acts by Madison are not excluded in the Harleysville policy.

When one examines both the policy provision and the claims made in the Complaint filed in the underlying personal injury action, it is evident that Harleysville has a duty to defend Madison in the personal injury action. The exclusionary language of the policy which refers to pollution does not apply because the bodily injury claim made by Izzi is not premised upon Madison's conduct as it may relate to the release of hazardous fumes. Since the claims of negligence made by Izzi do not fall under any exclusion of the policy, I would affirm the trial court's decision requiring Harleysville to provide Madison with a defense. I would note that the trial court made this ruling on other grounds, however we are free to affirm the decision of the trial court if the result is correct, on any ground. *Schimp v. Allaman*, 442 Pa.Super. 365, 659 A.2d 1032 (1995).

Although I would affirm the trial court's decision for the reasons stated above, I am compelled to also remark that the Majority misinterprets the exclusionary language in the policy at issue. Particularly I note my disagreement with the Majority's conclusion that this case involved the use of a "pollutant," as that term is defined in the policy.

The definition of "pollutant" included in the policy reads:

[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The Majority concludes that the "fumes" were a pollutant. However the Majority fails to recognize that the terms "vapor," "fumes" and "gaseous" modify the words "irritant or contaminant" which are meant to describe the type of material which constitutes a "pollutant." Unlike the Majority, I would accept the trial court's conclusion that the floor coating used in this case was not an "irritant" or "contaminant" because this product was a useful tool for construction. The trial court held that the Euco Floor Coat which was being used by Madison on the work site was a "necessary instrument" and "a tool of the trade," and that it was not an "irritant" or a "contaminant" because it was neither objectionable nor un-

wanted. In support of its ruling, the trial court cited the North Carolina Court of Appeals decision in *West American Insurance v. Tufco Flooring*, 104 N.C.App. 312, 409 S.E.2d 692 (1991).

The *West American* court considered a strikingly similar situation, with regard to both the product at issue and the policy language. Therein the court was considering whether West American's policy applied where chicken was damaged at a Perdue plant by an infiltration of vapors or fumes from a resurfacing product used by Tufco.[1] The policy included a definition of pollution identical to the language of the policy at issue here. In concluding that the flooring material was not a "pollutant" under the pollution exclusion clause, the court stated:

> Turfco did not bring the *vapors* or *fumes* which invaded the chicken to the Perdue plant. Rather, Turfco brought an unadulterated, pure raw material, styrene monomer resin, in one-gallon metal cans with screw-on caps. When this raw material was brought onto the site, it was neither an "irritant or contaminant." It was a raw material used by Tufco in its normal business activity of resurfacing floors. Yet, to be a "pollutant" under the exclusion, a substance brought onto the site must be precisely that, an "irritant or contaminant."

*Id.* at 322, 409 S.E.2d at 698.

For these same reasons I find the product used in this case, a floor sealant, not to be a pollutant as that term is defined in the policy. The sealant cannot be said to be either an "irritant" or a "contaminant." While many products may have some related irritating results, the product itself is not an

1. Although I offer this case in support of my determination that the product used here was not a pollutant, it should be noted that unlike the case now before us, the *West American* case involved a claim of damage directly caused by the use of a product and its emanating vapors. As I stated in my earlier discussion, here the underlying suit is not based upon a claim for damage caused by the release of vapors or the use of a product, rather other grounds of negligence are asserted, including failure to warn and failure to cover or barricade a hole in the floor.

irritant or contaminant. To so label a product would result in a finding that common household cleaners, bleaches, hair care products, or chlorine are pollutants. Nearly all products may be irritating in some fashion to someone, but this does not make the product itself an "irritant or contaminant" such as to constitute a pollutant. Contaminants and irritants are those substances which are commonly recognized as polluting the environment. They may in fact be a commonly used product, if that product is not being used as intended. However useful products, which are being used as intended, cannot, and should not, be considered pollutants.

The Majority quickly dismisses the application of *West American* to this case and finds that it carries "no precedential value." While true that we are not bound by the holding of this ruling by our sister state, I believe it to be both wise and prudent to consider its rationale under circumstances so similar. Further in view of the fact that it provides sound rationale for its decision, I would rely on its ruling in support of my conclusion that the pollution exclusion is inapplicable in this case.

Unrelated to the above discussion I wish also to add my comments with regard to the Majority's discussion of *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa.Super. 501, 656 A.2d 142 (1995). Therein Judge Beck wrote that the term "atmosphere" appearing in a pollution exclusion of a comprehensive general liability policy was ambiguous. The term was then construed in favor of the insured and it was held that the exclusion did not apply to the release of carbon monoxide from a malfunctioning water heater inside a restaurant.

With regard to the *Gamble* case the Majority first writes that it is distinguishable because it concerns a pollution exclusion which includes the language " 'into the atmosphere' when describing the area into which a pollutant must escape so that the exclusion applies." Opinion at 143. I have no dispute with the determination that the policy language of the two cases differ, however I do have a problem with the Majority's latter

discussion of the *Gamble* case and its *sub silentio* attempt to invalidate the *Gamble* holding in a footnote. Opinion at 146–147, ftn. 6.

In footnote five the Majority begins with a comment that it need not consider Harleysville's second issue, which asks whether the existence of conflicting judicial authority in foreign jurisdictions established *ipso facto* an ambiguity in the pollution exclusion. The Majority then recounts the ruling in *Gamble* which finds that the existence of an ambiguity is demonstrated by the fact that the decisions of other courts have interpreted the term "atmosphere" differently. The Majority writes that it is not "invalidating" the reasoning of *Gamble,* however it goes on to state: "[r]ather than relying on the fact that jurisdictions are split over construing the provisions or that one jurisdictional line of reasoning is better than another, courts must remember to invoke the basic tenet of contract law and look to the writing itself first, before otherwise deciding that a policy is ambiguous." *Id.*

My reading of this footnote finds that the Majority is in fact attempting to do exactly what it claims not to do -invalidate the reasoning of *Gamble.* I find this inappropriate to do in a footnote and unnecessary to the resolution of the matter before us.

CAVANAUGH and BECK, JJ., join.

McEWEN, President Judge, concurs in the result.